**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Jeffrey A. Shooman
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Email: bgreenberg@litedepalma.com
       jshooman@litedepalma.com

*Attorneys for plaintiffs and the putative class*
[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL KLEIN AND STEPHANIE KLEIN, on behalf of themselves and others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>BUDGET RENT A CAR SYSTEM, INC. and AVIS BUDGET GROUP, INC.,<br><br>　　　　　　Defendant. | Civil Action No.: 2:12-cv-7300 (JLL) (MAH)<br><br>**AMENDED CLASS-ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## <u>INTRODUCTION</u>

Daniel Klein and Stephanie Klein, on behalf of themselves and others similarly situated, bring this action to obtain damages from and injunctive relief against Budget Rent A Car System, Inc. and Avis Budget Group, Inc. (together, "Budget") for charging them and class members hidden surcharges to obtain frequent-flyer miles or reward points earned from Budget's travel partners in connection with rental-car agreements.

## PARTIES

1.      Plaintiffs Daniel Klein and Stephanie Klein are Illinois citizens and reside at 415 Wisconsin St., Unit E, Chicago, Illinois 60614. During the class period, Budget charged plaintiffs and plaintiffs paid Budget a hidden surcharge for frequent-flyer miles that Stephanie Klein earned from a Budget travel partner in connection with her rental-car agreement.

2.      Defendant, Avis Budget Group, Inc. ("ABG") is a corporation organized under the laws of Delaware with corporate headquarters located at 6 Sylvan Way, Parsippany, NJ 07054.

3.      Defendant Budget Rent A Car System, Inc. ("BRACS") is a Delaware corporation with its headquarters at 6 Sylvan Way, Parsippany, NJ 07054. Defendant BRACS is an indirect subsidiary of Defendant ABG.

4.      Together, Defendant ABG and Defendant BRACS control the content and operation of Budget's website, Budget.com from their shared headquarters.

## JURISDICTION AND VENUE

1.      This Court has diversity subject matter jurisdiction over this class action lawsuit pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs."

2.      This Court has personal jurisdiction over the parties because plaintiffs submit to this Court's jurisdiction and Budget is headquartered in this District.

3.      Venue exists in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Budget resides in, transacts business in, is found within, and has agents in this District and a substantial part of the events giving rise to plaintiffs' claims arose in this District.

## FACTUAL ALLEGATIONS

A.      ***Budget's background***

4.      Founded in 1958, Budget operates one of the world's leading car-rental brands, providing business and leisure customers with a wide range of services multiple locations throughout the U.S. and abroad.

5.      To rent a vehicle from Budget, customers must make a vehicle reservation either by telephone or online through www.budget.com. This lawsuit currently concerns only vehicle rentals made through www.budget.com.

6.      When making reservations through www.budget.com, customers enter the date, time, and location of their rental; the type of vehicle to be leased; and certain personal data.

7.      When making their online reservation, customers also may choose to purchase, for an additional fee, rental options such as GPS Navigation, XM Satellite Radio, Fuel service Option, and various rental protections and coverages, such as Loss Damage Waiver, Personal Accident and Effects Insurance, and Supplemental Liability Insurance.

8.      At this point in the online-reservation process, Budget prominently displays in orange writing the "**TOTAL**" of the rental charges on-screen, which total includes the customer's car, options, and taxes & fees. ("Taxes & fees" are comprised of total taxes and total fees; "total fees" are comprised of city surcharge, vehicle license, and customer facility.)

9.      Budget's next screen invites customers to enter their preferred airline's frequent-flier number for the purpose of accruing frequent-flier miles for having rented from Budget.

3

Until recently, Budget described no price associated with this invitation; although, Budget's recent description continues to lack objective conspicuousness. This screen also includes a prompt for customers to "rent it!"

10.     Budget next presents the customer with an online confirmation screen explaining, "You're done!," followed by Budget's Terms and Conditions, none of which include or otherwise mention a charge for accepting Budget's invitation to receive frequent-flier miles associated with a vehicle rental.

11.     This online confirmation again describes in bold a customer's "**TOTAL**," which, as described in ¶ 11, Budget tallies solely from the cost of a customer's "car," "options," and "taxes & fees" – none of which include or otherwise involve a charge for the frequent-flier miles that Budget invites its customers to receive for renting with Budget.

12.     Budget next e-mails a confirmation to its customer, which includes the same total as Budget offered throughout the entire vehicle-reservation process, this time expressed in bold as the customer's "**rental total USD**."

13.     The totals that Budget expresses in its online confirmation (¶¶ 13-14) and e-mail confirmation (¶ 15)  confirms the customer's total rental charge, which is comprised of the same pricing elements as described in ¶ 11. In this manner, Budget's rental-reservation process promises three times a total that does not contain a charge for the frequent-flier miles that Budget invites and encourages its customers to request.

14.     Budget provides customers with a document entitled Rental Terms and Conditions at the time customers pick up their rental vehicles. Budget also provides customers with a Rental Agreement that describes details of the rental, including the vehicle's make and

model; rental dates; mileage at pick-up; and an itemized list of the rental charges, including all optional charges, such as GPS navigation.

15.     When customers return the vehicle, Budget provides them a Return Agreement Receipt, which itemizes the final rental charges.

16.     As part of Budget's vehicle-rental business, it offers complimentary membership programs designed to speed-up and streamline the reservation-and-rental process.

17.     Budget's *RapidRez* program provides customers with a personal member identification number that allows them to create and save a rental profile that contains their personal data, rental preferences, and special-discount information. This way, customers need not enter this information every time they make a reservation.

18.     The *RapidRez with Fast Break* program includes the added benefit of allowing customers to bypass the service counter upon airport arrival and to proceed directly to their rental vehicles where the Rental Terms and Conditions and Rental Agreement await them.

19.     Customers who enroll in the *RapidRez* program agree to be bound by terms and conditions that apply both to *RapidRez* customers as well as customers who have upgraded their *RapidRez* membership to *RapidRez with Fastbreak*. In this manner, *RapidRez* and *RapidRez with Fastbreak* customers agree to be bound by the same terms and conditions.

20.     *RapidRez* and *RapidRez with Fastbreak* members may choose to receive e-receipts for their rental transaction, which e-receipts itemize their final rental charges.

**B.**     *Budget's Frequent Traveler Program and this program's secret frequent-flyer-miles surcharge*

21.     Through Budget's Frequent Traveler Program, customers may earn frequent-flyer miles or reward points on car rentals made at participating Budget locations through a variety of partnerships with airlines, hotels, and other select companies (Budget's "Travel Partners").

22.     For example, at the time that plaintiffs entered into the rental transaction that is the subject of this Complaint, customers could earn with United Airlines 50 miles per rental day or 500 miles on rentals of five or more days.

23.     *RapidRez* and *RapidRez with Fastbreak* customers who wish to earn frequent-flyer miles or reward points may enter their frequent-flyer or reward-program membership number during the online-reservation process. All other customers who wish to earn miles or reward points may submit their frequent-flyer or rewards-program membership number by telephone after completing their online reservation.

24.     Budget pays its travel partners for the cost of miles or points purchased from them as well as a 7.5% federal excise tax. Under the Tax Relief Act of 1997, this 7.5% federal-excise tax applies to all states, except Arizona, California, Missouri, Oregon, and Wyoming.

25.     But without suitable disclosure, Budget turns around and charges its customers a surcharge for requesting and earning these miles or reward points from its Travel Partners— miles that Budget, at all stages in the rental process, invites and encourages its customers to request and receive by suggesting to its customers that Budget will provide these miles or reward points at no additional charge.

26.     And while Budget's Frequent Traveler Program Terms and Conditions (to the extent customers even see them) mentions, "Surcharges and taxes are not quoted on your online reservation rate. If the location you are renting at participates in the program, the surcharge will

6

be added to your rate at the rental counter when you return your car," at the time of plaintiffs' rental, Budget never explained (and continues to explain inadequately) at any point in the rental-reservation process—despite three opportunities to do so— that even the potential for such a surcharge existed and in fact *did* exist with respect to rentals at major pick-up locations, such as airports.

27.     Consistent with this hidden surcharge, Budget charges its customers $0.75 per rental day for the "benefit" of accruing frequent-flyer miles or reward points.

28.     But neither Budget's Terms of Use—relating to all vehicle rentals—nor its Fast Break Terms and Conditions—relating to rentals by customers enrolled in Budget's *RapidRez* and *RapidRez with Fastbreak* explains—previously at all and now inadequately—that Budget will charge customers for the frequent-flyer miles or reward points that Budget encourages and invites customers to request and accrue.

29.     In this manner, Budget baits and switches its customers first by suggesting that it will provide them frequent-flyer miles or reward points at no additional charge and then quietly—indeed, secretly—charging them for the frequent-flyer miles or reward points that Budget encouraged and invited its customers to request as a benefit of their vehicle rentals without ever properly and objectively disclosing and explaining this surreptitious charge.

30.     At no time during the reservation-and-rental process does Budget disclose to its customers—in an objectively visible and understandable way—that it will charge them for frequent-flyer miles or rewards-points earned with their vehicle rentals.

31.     Instead, Budget makes customers believe that it will provide them frequent-flyer miles or reward points at no additional charge while unnoticeably charging them for these miles or points.

32.     Unlike surcharges for City Surcharge, Vehicle License, and Customer Facility, and rental options like GPS Navigation, Budget does *not* list its frequent-flyer miles or rewards-points surcharge on the "**TOTAL**" that Budget prominently displays during the online reservation process, nor does Budget list this surcharge anywhere on the e-mail reservation confirmation that itemizes every *other* charge that Budget intends to charge its customers.

33.     Likewise, Budget's terms and conditions make no mention that Budget will charge customers for earning frequent-flyer miles or reward points.  With respect to "Rental Charges," Budget's Rental Terms and Conditions and its Fast Break Terms and Conditions instead explain as follows:

> Rental Charges
>
> You will pay for the number of miles/kilometers you drive and the period of time you rent the car at the rate provided to you by the reservation agent or reservation system at the time of reservation, or your applicable corporate rate. The minimum charge is one day (24 hours) plus mileage/kilometerage, or a fixed fee. We will determine the miles/kilometers by reading the factory-installed odometer. The daily charge applies to consecutive 24-hour periods starting at the hour and minute the rental begins. If you fail to comply with any conditions for special rates specified on the rental document our otherwise applicable rates will be charged. You'll pay all charges that apply to the rental for miscellaneous services and, where permitted, airport facility fees and/or concession recovery fees, vehicle license recovery fees, other fees and surcharges. If you use a car with automatic toll payment capability, you will pay for all tolls incurred during your rental and all related service charges. You will also pay a reasonable fee for cleaning the car's interior upon return for excessive stains, dirt or soilage attributable to your use. You and any third party to whom any rental charges are billed, such as an insurer or employer, are jointly and severally responsible for payment of all such charges. If you direct us to bill any such charges to a third party, you represent that you are authorized to do so.

34.     Moreover, Budget's webpage describing information about its travel partners is captioned, "smart perks" followed by "frequent flyer miles/partner perks." "Perks," of course, means, "an extra financial benefit; a monetary inducement or reward." *Dictionary of American Slang and Colloquial Expressions*, (4th ed. 2007).

35.     But instead of describing—either at all or properly—its frequent-flyer miles or rewards-points surcharges during the reservation process or anywhere in the explanatory materials that shape and control its customers' rental relationships, when customers pick up their vehicles, Budget includes on the Rental Agreement—for the first time—a line-item charge tucked discreetly into the lower left column entitled "FTP Sur." This term is encoded in a manner that no reasonable renter can or should be expected to decipher and appears among other capitalized fees that Budget previously disclosed to its customers. Budget then slips this same term into customers' Rental Agreement Receipts, again hidden and encoded in the this same manner and again sneaks it into customers' electronic receipts in an *newly* designed code: "FTP SR."

36.     Budget hides its frequent-flier surcharge in this manner because it knows that when picking up a rental car, customers are not inclined to review their Rental Agreements—and at return, their Rental Agreement Receipts—for extra, undisclosed charges. Indeed, Budget acknowledges this reality in it *Fastbreak* Enrollment Form, where Budget admits that *RapidRez with Fastbreak* enrollment allows customers to, "Get In, Get Out, Get Going™ on your way, fast!"

37.     Importantly, neither Budget's Rental Agreement nor its Return Agreement Receipt describe Budget's secret code or explain that these codes involve surcharges for customers' frequent-flyer miles or reward points earned from vehicle rentals.

## C.     *Plaintiffs' facts*

38.     On July 14, 2012, Plaintiff Daniel Klein made a rental reservation for Plaintiff Stephanie Klein—a Budget *RapidRez with Fastbreak* member—through www.Budget.com. He reserved a four-day rental of a Dodge Avenger (or similarly classed vehicle) for July 15-19,

2012, which Mrs. Klein planned to pick up and return to Cleveland-Hopkins International Airport.

39.     During the reservation process, Budget prompted Mr. Klein to enter Mrs. Klein's United Mileage Plus number, which he did. This way, she could receive frequent-flyer miles for her rental.

40.     Before completing this vehicle rental, Budget listed all of plaintiffs' rental charges, none of which included a frequent-flyer mile surcharge.

41.     Immediately after Mr. Klein completed Mrs. Klein's rental reservation, Budget's confirmation screen confirmed the total cost for this rental to be $427.56, describing this charge as follows:

**Rate (USD)**

| | |
|---|---|
| car | 340 |
| options | 0.00 |
| taxes & fees | 87.56 |
| **TOTAL** | $ 427.56 |

A true copy of plaintiffs' confirmation screen is attached as Exhibit 1.

42.     Budget's confirmation screen included additional Terms and Conditions. In particular, these Terms and Conditions explained, "**This isn't simply 'fine print' our lawyers ask us to include.** . . . [W]e *really* want you to be happy with your Budget experience. See you soon!" *Id.* (bold and italics in original)

43.     Budget's confirmation also discussed the entire universe of charges that plaintiffs could expect to receive:

> Your total rental rate is calculated based on the information ***provided at time of reservation***. The rate is based on ***the exact parameters (location, dates, etc.) of your particular rental***—so changing *any* of your confirmed reservation parameters could result in a different rates, taxes and fees.

• Surcharges[—when mentioned although plaintiffs' rental reservation mentioned none—]and other fees are subject to tax in certain locations. This tax is not reflected in your reservation total and will be applied at time of rental.

• Quoted taxes and fees[—although Budget's frequent-flier surcharge is neither—] are subject to change which will affect your final total due at rental return.

*Id.* (bolded emphasis added).

44.     Budget's e-mail confirmation contained the same language as described in ¶ 46 and explained again that Budget was charging plaintiffs only for the following items:

**<u>Rate (USD)</u>**

| | |
|---|---|
| car | 340 |
| options | 0.00 |
| taxes & fees | 87.56 |
| **TOTAL** | $ 427.56 |

45.     Based on Budget's rental-reservation process, confirmation screen, and e-mail confirmation, plaintiffs knew precisely what charges to expect (or not to expect) and were provided no reasonable basis to suspect that Budget intended to—and would—charge them for frequent-flyer miles or reward points that Budget encouraged and invited them to request and accrue.

46.     When Mrs. Klein arrived at the airport on the day of her rental, as a Budget *RapidRez with Fastbreak* member, she dashed past the Budget service counter and headed directly to her vehicle, as Budget intended and its *RapidRez with Fastbreak* program encouraged. After all, Budget designed this program so that its *RapidRez with Fastbreak* members could "Get In, Get Out, Get Going™ on your way, fast!"

47.     Budget inconspicuously slid plaintiffs' Rental Agreement (Exhibit 2) into a Rental Terms and Conditions multi-fold sleeve. Plaintiffs' Rental Agreement included the

identical charges as had appeared on Budget's confirmation screen and e-mail confirmation but now—for the first time—these charges included Budget's $0.75/day "FTP Sur" charge.

48.     As described in ¶ 38, Budget had quietly tucked this new charge into its Rental Agreement's lower left column toward the bottom line in a sea of other undefined and codes with the exception of capitalized charges that Budget intended customers to see. What's more, this surreptitious charge appeared in tiny font designed and formatted never to be read or questioned, much less understood by a reasonable renter, especially one who was dashing and driving, as Budget intended and its *RapidRez with Fastbreak* program encouraged.

49.     When Mrs. Klein returned her car, Budget issued her a Rental Agreement Receipt. This Rental Agreement Receipt again included an "FTP Sur" charge of $0.75/day, still hidden among other terms, some capitalized for viewing (if at all), and still failing ever to decode or explain this charge.

50.     By its scheme, Budget illegally charged plaintiffs $3.00 for frequent-flier surcharges to which Budget was not entitled, as reflected in plaintiffs' electronic receipt, which reflects a total charge of $547.39 and refers to Budget's frequent-flier surcharge now in a *newly* encoded format, "FTP SR." A true copy of plaintiffs' electronic receipt is attached as Exhibit 3.

## **CLASS-ACTION ALLEGATIONS**

51.     Plaintiffs bring this lawsuit on behalf of the following class under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All Budget customers who rented a vehicle from Budget through www.budget.com and who paid a surcharge for receiving frequent- flyer miles or reward points from a company that participated as a Budget travel partner.

> Excluded from plaintiffs' class are (a) Budget and any entity in which Budget has a controlling interest; (b) Budget's

12

> employees, officers, directors, agents, and representatives and
> their family members; (c) class counsel, employees of class
> counsels' firms, and class counsels' immediate family
> members; and (d) the presiding judge and magistrate judge
> and any of their immediate family members.

52.     Budget deceived plaintiffs into paying a surcharge for frequent-flyer miles or reward points in connection with a vehicle rental; therefore, plaintiffs are class members.

53.     Plaintiffs can identify all other class members from Budget's records.

54.     Plaintiffs do not know the exact size of the class since this information is in Budget's exclusive control. But based on the nature of the commerce involved, plaintiffs believe that the class numbers in the thousands and that class members are dispersed throughout the U.S. Therefore, joinder of all class members would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

55.     Plaintiffs' claims are typical of other class members' claims because plaintiffs and class members were all injured by Budget's uniform deception of leading customers to believe that Budget would not charge them for frequent-flyer miles or reward points.

56.     Common legal or factual questions predominate within the class, including but not limited to the following:

> a.     Whether Budget's uniform representations, omissions, and conduct regarding its frequent-flyer miles or rewards-points surcharge were misleading or false;
>
> b.     Whether Budget uniform behavior in marketing its program that allowed customers to accrue frequent-flier miles or rewards points (hereinafter, Budget's "Travel Partner Program") constituted affirmative misrepresentations, intentional omissions, or unconscionable commercial practices that violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*;
>
> c.     Whether Budget's uniform representations, omissions, and conduct— including reference to "perks"—were likely to deceive consumers into believing that Budget would provide them frequent-flyer miles or reward

points at no additional charge to the other prices that Budget enumerated in consumers' rental reservations;

d.    Whether Budget undertook a course of conduct to hide its frequent-flyer miles or rewards-points surcharge;

e.    Whether Budget's conduct injured plaintiffs and class members;

f.    Whether as a result of Budget's wrongdoing, plaintiffs and class members sustained damages and are entitled to damages and/or restitution and if so, the proper measure and appropriate formula for determining their damages and restitution;

g.    Whether Budget owes plaintiffs and the class members injunctive relief; and

h.    Whether plaintiffs' and class members' claims are governed by New Jersey law, as required by Budget's Terms of Use and Fastbreak Service Terms and Conditions.

57.    Plaintiffs can and will fairly and adequately represent and protect class members' interests and have no interests that conflict with or are antagonistic to their interests. Moreover, plaintiffs' attorneys are experienced and competent in complex class-action litigation.

58.    Class certification is the superior procedural vehicle for fairly and efficiently adjudicating plaintiffs' claims because:

a.    Common questions of law or fact predominate over any individual questions that exist within the class and, consequently, economies to the Court and the parties exist in litigating these common issues on a classwide basis instead of on a repetitive, individual basis;

b.    Each class member's damage claim is too small to make individual litigation an economically viable possibility, and few class members have any interest in individually controlling the prosecution of separate actions;

c.    Class treatment is required for optimal deterrence and compensation and for limiting the Court-awarded, reasonable legal expenses incurred by class members;

d.    Despite the relatively small size of each class member's claim, the aggregate volume of their claims—coupled with the economies of scale inherent in litigating similar claims on a common basis—will enable class counsel to litigate the class on a cost-effective basis; and

e.      Plaintiffs anticipate no unusual difficulties in this class action's management in that all legal and factual questions are common to the class.

59.      Class certification is appropriate under Federal Rule 23(b)(2) because Budget has acted on grounds generally applicable to plaintiffs and the class members, all of whom are at imminent risk of irreparable harm from Budget having charged and continuing to charge them hidden surcharges for frequent-flyer miles and reward points and all of whom are entitled, as a result, to a declaration that establishes their rights and Budget's duties with respect to these surcharges.

## <u>FIRST CAUSE OF ACTION</u>
### Violation of New Jersey Consumer Fraud Act against ABG and BRACS
### (N.J.S.A. 56:8-1, *et seq.*)

60.      This legal claim incorporates all of the foregoing allegations.

61.      In violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*—particularly N.J.S.A. 56:8-2—Budget used and employed unconscionable commercial practices, deception, fraud, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts with the intent that others rely thereon, in its marketing, advertisement and implementation of its Travel Partner Program.

62.      ***Budget's unlawful conduct – Budget's affirmative misrepresentations.*** By the following affirmative acts, Budget misrepresented the truth to plaintiffs and other reasonable renters, acting in such a manner as to convince plaintiffs and other reasonable renters that Budget would not charge them for the frequent-flyer miles or reward points that Budget invited and encouraged plaintiffs and reasonable renters to request during the rental-reservation process:

a.      Budget affirmatively represented to plaintiffs and other reasonable renters that its Travel Partner Program involved no additional charge in the total price that Budget quoted to plaintiffs and other reasonable renters by

15

failing to disclose its frequent-flyer miles or rewards-points surcharge to plaintiffs and other reasonable renters—referring to the frequent-flyer miles or reward-points that Budget encouraged and invited plaintiffs and customers to request as "perks"—and instead by enumerating only *other* fees and charges associated with plaintiffs' and other reasonable renters' vehicle rentals.

b.     Budget affirmatively listed multiple other charges to plaintiffs and other reasonable renters during the on-line rental-reservation process and affirmatively invited plaintiffs and other reasonable renters to enter their airline frequent-flyer number or points-program number, which they did. But during this entire time and afterwards, Budget affirmatively hid (in discrete, extremely difficult-to-find areas on its website) and affirmatively and double encoded (in later-produced documents that Budget expected neither plaintiffs nor reasonable renters to see, understand, or appreciate, twice as "FTP Sur" and once as "FTP SR") the fact that Budget was affirmatively charging plaintiffs and other reasonable renters $.0.75/day for the frequent-flyer miles or reward points that Budget never disclosed—at all or properly—during the reservation process.

c.     Although Budget's rental-reservation process listed plaintiffs' and other reasonable renters' "total" rental prices, Budget affirmatively misrepresented that only specific pricing elements constituted plaintiffs' and other reasonable renters' rental prices, and these specific elements did not include Budget's frequent-flyer miles or rewards-points surcharge.

d.     While affirmatively misrepresenting to plaintiffs and other reasonable renters that their total rental prices were based on specifically enumerated pricing elements, Budget also affirmatively represented that only "miscellaneous services and, where permitted, airport facility fees and/or concession recovery fees, vehicle license recovery fees, other fees and surcharges" were subject to later inclusion to plaintiffs' and other reasonable renters' total rental prices. But Budget made no similar reference that its frequent-flyer miles or rewards-points surcharge would also affect plaintiffs' and other reasonable renters' rental prices.

e.     Although Budget's rental-reservation process clearly and affirmatively stated and explained to plaintiffs and other reasonable renters that Budget would not charge them for the frequent-flyer miles or reward points that Budget's on-line rental-reservation process affirmatively encouraged plaintiffs and other reasonable renters to request, Budget did, in fact, charge plaintiffs and other reasonable renters for these frequent-flyer miles and reward points.

f.     Budget affirmatively structured and designed its website in such a manner as to bury its website's reference to Budget's frequent-flyer miles or rewards-points surcharge multiple drags, clicks, and web pages deep.

Budget also affirmatively structured and designed its website in such a manner as to cause plaintiffs and other reasonable renters not to discover Budget's frequent-flyer miles or rewards-points surcharge.

To discover Budget's frequent-flyer or reward-points surcharge, plaintiffs and other reasonable renters would have had to undertake the investigative process from a place entirely unassociated with where they would start the online-reservation process (much less an investigation that they never even knew or ever expected they had to initiate). To discover this charge, Budget affirmatively structured and designed its website in such a manner as to require plaintiffs and other reasonable renters to sidestep the reservation fields that Budget prominently displayed on its homepage and from where Budget reasonably expected plaintiffs and other reasonable renters to begin their on-line rental-reservation process.

Instead, plaintiffs and other reasonable renters had to (yet wouldn't or couldn't) know to click "services," which not only is Budget's fifth of six tabs but bears a moniker bearing no reasonable relationship to the rental-reservation process. In this manner, Budget affirmatively structured and designed its website to require plaintiffs and other reasonable renters to plot a course through multiple web pages if they ever hoped to find Budget's eventual reference to its frequent-flyer miles or rewards-points surcharge (affirmatively misdescribed as a "tax") that Budget buried deep in its website.

Budget's affirmative web design and structure creates the plausible inference that Budget affirmatively acted to prevent plaintiffs and other reasonable renters from discovering Budget's frequent-flyer miles or rewards-points surcharge.

g.   Budget structured and designed its website, rental-reservation process, Rental Agreement, and Rental Agreement Receipt in such a way as to hide Budget's charge to plaintiffs and other reasonable renters for the frequent-flyer miles or reward points that Budget encouraged and invited them to accrue when entering their airline frequent-flyer number or points-program number. Budget hid this surcharge from plaintiffs and other reasonable renters when Budget could have easily and simply referred to this charge in its enumerated pricing fields and/or on its homepage for plaintiffs and other reasonable renters to see before completing their rental reservations.

Instead, Budget, in addition to omitting reference to its frequent-flyer miles or rewards-points surcharge from the rental-reservation process and hiding this information deep in its website, listed its frequent-flyer miles or rewards-points surcharge at the bottom of the lower left column of plaintiffs' and other reasonable renters' Rental Agreement and Rental Agreement Receipt, in no darker or more pronounced, or larger print or

17

font than any of these documents' other pro-forma terms (some capitalized so that *those* words would be notice in the event renters happened to see this language). What's more, Budget quietly slipped its Rental Agreement into a multi-fold sleeve.

Budget designed its rental-reservation process so that plaintiffs and other reasonable renters would have little chance even to see their Rental Agreements and Rental Agreement Receipts (and the new term tucked into them) before committing to Budget and driving off since, after all, Budget's Rental Agreement and Rental Agreement Receipt did not even exist when plaintiffs and other reasonable renters formed their contracts with Budget. When Budget did eventually refer to its frequent-flyer surcharge, it did so in the form of a secret code—" FTP Sur": a code that was contained in Budget's Rental Agreement, then as "FTP SR":  a different code that was contained in Budget's Rental Agreement Receipt. Budget could not expect any reasonable renter to crack these codes, especially considering how these acronyms neither looks nor sound like "frequent-flyer" or "reward points" anything.

These facts create the plausible inference that Budget made affirmative misrepresentations for the purpose of committing an unlawful act proscribed by the NJCFA—namely, to generate additional and illegal revenues from plaintiffs and other reasonable and unsuspecting renters.

h.    Budget's omissions of accurate information about material facts—namely, Budget's intention to charge plaintiffs and other renters for the frequent-flyer miles and reward points that its reservation process encouraged and invited them to request—rendered Budget's statements concerning its rental-reservation process affirmative misrepresentations. Plaintiffs' allegations concerning Budget's affirmative misrepresentations essentially subsume Budget's knowing omissions.

i.    Budget's affirmative misrepresentations were material to plaintiffs and other reasonable renters' decisions to request frequent-flyer miles or reward points. The knowledge of a charge for frequent-flyer miles or reward points is important to vehicle renters because: (1) they need and deserve to make informed decisions concerning whether they want to spend money for frequent-flyer miles or reward points, and (2) they need and deserve to be able to calculate whether these frequent-flyer miles or reward points might actually cause them to *lose* money where Budget's surcharge for frequent-flyer miles or reward points exceeds the cash value of the miles or points received.

But Budget did *not* allow plaintiffs and other reasonable renters to make this important calculation. Budget intentionally disregarded these practical and important reasons for why plaintiffs and other reasonable renters needed to know that Budget was charging them for frequent-flyer miles

and reward points. Budget's disregard of a fact affecting the ultimate cost to plaintiffs and other reasonable renters for frequent-flyer miles or reward points creates the plausible inference that plaintiffs and other reasonable renters would have considered knowledge of the surcharge material to their decision whether or not to provide Budget their airline frequent-flyer number or points-program number—as opposed, importantly, to this information having affected their decision to rent a vehicle from Budget.

63.   ***Budget's unlawful conduct – Budget's intentional omissions.*** Budget made the following omissions with intent and knowledge to conceal or omit material facts (i.e., knowing concealments) by both failing to include these material facts in a place where plaintiffs and other reasonable renters would expect to see them and by instead (to the extent that any disclosure was made at all) hiding these facts in obscure places with the intention that neither plaintiffs nor other reasonable renters ever see them:

a.      When plaintiffs and other reasonable renters executed their rental agreements, Budget had not disclosed to them its intention to charge them for frequent-flyer miles or reward points, which Budget did intend to do, if plaintiffs and other reasonable renters accepted Budget's invitation to enter their airline frequent-flyer number or points-program number.

b.      Budget never informed—at all or properly—plaintiffs and other reasonable renters of the frequent-flyer miles or rewards-points surcharge that Budget intended to (and did) charge them if plaintiffs and other reasonable renters accepted Budget's invitation to enter their airline frequent-flyer number or points-program number.

c.      By refusing to make a clear and comprehensive disclosure of its frequent-flyer miles or rewards-points surcharge (either during the rental-reservation process or on its website) when Budget was aware that it was going to assess this charge, Budget acted with intent and knowledge to conceal or omit the material fact that it was going to charge plaintiffs and other reasonable renters for the frequent-flyer miles or reward points (i.e., "perks") that Budget invited them to accrue when entering their frequent-flyer number or points-program number.

d.      Had Budget wanted or intended for plaintiffs and other reasonable renters to know that it was charging them for the frequent-flyer miles or reward points (i.e. "perks") that it invited them to accrue when entering their airline frequent-flyer number or points-program number, Budget could—indeed, should—have described this intention during the on-line rental-reservation process by including this charge in the list of other enumerated

19

pricing fields that plaintiffs and other reasonable renters observed while engaging in the vehicle-rental process or elsewhere on Budget's website.

To accomplish this, Budget could—indeed, should—have included this surcharge (or at least complete reference to it) somewhere on one of the screens associated with Budget's on-line rental-reservation process, including on the confirmation page. When doing this, Budget could—indeed, should— have done this in a place and manner where Budget could expect plaintiffs and other reasonable renters to see, appreciate, and understand it.

The fact that Budget omitted this information from the rental-reservation process and omitted it from any conspicuous place on its website, when it could—indeed, should—have easily included it in both places, creates the plausible inference that Budget omitted this information intentionally and knowingly for the purpose of generating additional and illegal revenues from plaintiffs and other reasonable and unsuspecting renters.

e.      Budget refused to disclose, during the rental-reservation process and meaningfully on its website, its intention to charge plaintiffs and other reasonable renters a frequent-flyer miles or rewards-points surcharge for the frequent-flyer miles or reward points (i.e. "perks") that Budget invited them to accrue when entering their airline frequent-flyer number or points-program number.

Budget omitted any (or reasonable) reference to its frequent-flyer miles or rewards-points surcharge in the enumerated items that constituted plaintiffs' and other reasonable renters' total charges, omitted reference to its frequent-flyer miles or rewards-points surcharge when listing other charges that were necessarily subject to later inclusion, and omitted any reference to its frequent-flyer miles or rewards-points surcharge on its homepage, from where it encouraged plaintiffs and other reasonable renters to proceed when making their on-line vehicle rentals.

These facts are all material omissions relating to Budget's intention to charge plaintiffs and other reasonable renters for the frequent-flyer miles or reward points (i.e., "perks") that Budget invited them to accrue when entering their airline frequent-flyer numbers or points-program numbers. These facts create the plausible inference that Budget made these omissions knowingly and intentionally for the purpose of generating additional and illegal revenues from plaintiffs and other reasonable and unsuspecting renters.

f.      By informing plaintiffs and other reasonable renters that their "total" rental prices were based on specifically enumerated pricing elements and by omitting any or reasonable reference to Budget's frequent-flyer miles or rewards-points surcharge when Budget knew it was going to assess this

surcharge, Budget acted with intent and knowledge to conceal or omit this material fact.

g.     Budget's intentional omissions were material to plaintiffs' and other reasonable renters' decisions to request frequent-flyer miles or reward points. The knowledge of a charge, which Budget intentionally omitted thereby creating the plausible inference that frequent-flyer miles or reward points could be obtained at no additional charge (i.e., were "perks"), is important to vehicle renters. This knowledge is important to them because: (1) they need and deserve to make informed decisions concerning whether they want to spend money for frequent-flyer miles or reward points, and (2) they need and deserve to be able to calculate whether these frequent-flyer miles or reward points might actually cause them to *lose* money where Budget's surcharge for frequent-flyer miles or reward points exceeds the cash value of the miles or points received.

But Budget did *not* allow plaintiffs and other reasonable renters to make this important calculation. Budget intentionally disregarded these practical and important reasons for why plaintiffs and other reasonable renters needed to know that Budget was charging them for frequent-flyer miles and reward points. Budget's disregard of a fact affecting the ultimate cost to plaintiffs and other reasonable renters for frequent-flyer miles or reward points creates the plausible inference that plaintiffs and other reasonable renters would have considered knowledge of the surcharge material to their decision whether or not to provide Budget their airline frequent-flyer number or points-program number—as opposed, importantly, to this information having affected their decision to rent a vehicle from Budget.

64.     ***Budget's unlawful conduct – Budget's unconscionable commercial practices and deceptions.*** Budget engaged in the following unconscionable commercial practices and deceptions:

a.     Budget repeatedly listed specific pricing elements during its rental-reservation process (only the *amounts* of which were subject to adjustment), then embedded its double-encoded frequent-flyer miles or rewards-points surcharge into plaintiffs' and other reasonable renters' Rental Agreements and Rental Agreement Receipts, knowing that plaintiffs and reasonable renters would neither detect nor understand that these later documents included Budget's hidden charge.

b.     In this manner, Budget advertised to plaintiffs and other reasonable renters merchandise (i.e., frequent-flyer miles and reward points) at no additional charge (i.e., "perks") as part of Budget's plan or scheme not to sell them vehicle rentals at the prices Budget presented and advertised in the price "total[s]" that Budget provided plaintiffs and other reasonable renters.

21

c.  As a result, Budget baited-and-switched plaintiffs and other reasonable renters by first not including—then later adding—secret, hidden, and/or improperly disclosed frequent-flyer miles or rewards-points surcharges to their vehicle rentals. This activity was altogether different from having merely encouraged plaintiffs and other reasonable renters to purchase a *different* product or service *in addition to* Budget's advertised vehicle rentals. It was different because Budget didn't "encourage" plaintiffs and other reasonable renters to do anything; rather, Budget hid what it was doing *from* plaintiffs and other reasonable renters.

d.  Budget's intention to charge and act of charging plaintiffs and other reasonable renters for frequent-flyer miles or reward points (i.e., the charges that Budget hid or improperly disclosed) constituted Budget's plan or scheme not to sell plaintiffs and other reasonable renters vehicle rentals at the prices that Budget advertised to them on its website and that Budget described to them in its subsequent rental confirmations.

e.  Budget's bait-and-switch concerned not plaintiffs' and other reasonable renters' vehicle-rental contract as a whole but rather their interest and belief in receiving frequent-flyer miles or reward points for no additional charge (i.e. "perks"), unlike the enumerated charges that Budget conspicuously circumscribed on plaintiffs' and other reasonable renters' vehicle-rental confirmation screens, in their e-mail confirmations, and on the other screens associated with the vehicle-rental process.

f.  Budget represented that no additional charges would be associated with plaintiffs' and other reasonable renters' vehicle rentals—Budget's "bait"—which Budget followed by charging plaintiffs and other reasonable renters for the frequent-flyer miles and reward points that Budget had earlier intentionally represented that it would not—Budget's "switch." In this manner, Budget's plan or scheme switched plaintiffs' and other reasonable renters' deals after they had made their rental-reservation contacts with Budget (i.e., after they had gotten in the door).

65.  ***Plaintiffs' ascertainable loss resulting from Budget's unlawful conduct.***

Budget's above-described conduct caused plaintiffs an ascertainable loss since, as a result, plaintiffs paid for frequent-flyer miles when Budget suggested that they would not have to.

66.  Plaintiffs had to pay for these frequent-flyer miles when they didn't expect to or have to because Budget misrepresented to them that there was no charge for these miles (i.e., they were "perks") and intentionally failed to disclose—at all or properly—the existence of this charge.

22

67.     Plaintiffs' ascertainable loss is definite, certain, and measurable—$0.75/day—rather than merely theoretical.

68.     By alleging damages of $0.75/day (for a total of $3.00), which is not .006% of plaintiffs' total rental charge but is instead 100% of their overpayment for frequent-flyer miles based on Budget's illegal behavior, plaintiffs and other reasonable renters are able to present their damages with certainty and are able to demonstrate that these damages are capable of calculation and particularization.

69.     By paying for frequent-flyer miles or reward points when Budget suggested that plaintiffs and other reasonable renters would not have to, plaintiffs and other reasonable renters lost the benefit of their bargain as to frequent-flyer miles and reward points (i.e., they paid more than they should have for what Budget delivered to them and paid what they did not expect or intend to pay). In this manner, Budget denied plaintiffs and other reasonable renters the fruits of their agreements with Budget as to frequent-flyer miles and reward points.

70.     As such, plaintiffs and other reasonable renters received less than Budget promised them. Budget's illegal conduct thus caused plaintiffs' and other reasonable renters' losses.

71.     ***The causal relationship between plaintiffs paying for frequent-flyer miles and Budget's scheme to make them believe they would not have to.*** Budget's misrepresentations, deceptions and intentional failure to list its frequent-flyer or reward-points surcharge along with its other enumerated pricing fields during the reservation process and Budget's intentional act of burying reference to this charge deep in its website caused plaintiffs and other reasonable renters to pay for frequent-flyer miles or reward points.

72.     Plaintiffs allege a causal connection between Budget's unlawful conduct (i.e., Budget's affirmative and/or intentional failure to list its frequent-flyer or reward-points surcharge alongside its other enumerated pricing fields during the reservation process, its act of intentionally burying reference to this charge deep in its website, and its bait-and-switch scheme) and plaintiffs' and other reasonable renters' ascertainable losses (i.e., the $0.75/day that Budget charged plaintiffs and other reasonable renters for frequent-flyer miles and reward points).

73.     Budget's unlawful conduct proximately caused plaintiffs and other reasonable renters to pay $0.75/day (or $3.00) wrongly for frequent-flyer miles and reward points, as opposed to having caused them to decide whether to rent from Budget or to request frequent-flyer miles during the rental-reservation process.

74.     During the process in which plaintiffs and other reasonable renters rented a vehicle, Budget's affirmative misrepresentations, and unconscionable commercial practices and deceptions were discreetly on Budget's website and in its Rental Agreement, Rental Agreement Receipt, and e-mail receipt, which affirmative misrepresentations, unconscionable commercial practices, and deceptions plaintiffs and other reasonable renters necessarily saw since they all completed the on-line reservation and subsequent rental process. In contrast, Budget kept its omissions and unconscionable commercial practices and deceptions quiet, meaning plaintiffs and other reasonable renters did not necessarily see them, as is the nature of omissions and unconscionable commercial practices and deceptions that are in the form of omissions.

75.     Budget expressed, made, and/or committed its affirmative misrepresentations, intentional omissions, unconscionable commercial practices, and deceptions during and after the rental-reservation process, which conduct plaintiffs and other reasonable renters were exposed to (as it concerned Budget's misrepresentations and unconscionable commercial practices and

deceptions) or which conduct Budget intentionally kept from plaintiffs and other reasonable renters (as it concerned Budget's omissions and unconscionable commercial practices and deceptions in the form of omissions).

76.     The facts constituting Budget's affirmative misrepresentations, intentional omissions, and unconscionable commercial practices and deceptions create the plausible inference that Budget intended to and did trick plaintiffs and other reasonable renters into believing that their rental "total[s]" included and entitled them to frequent-flyer miles and reward points (i.e., "perks"), which they did not, because neither plaintiffs nor other reasonable renters (as a direct and intended result of Budget's affirmative misrepresentations, intentional omissions and unconscionable commercial practices and deceptions) saw or understood that Budget would charge them for frequent-flyer miles and reward points. Indeed, everything Budget did with respect to inducing plaintiffs and other reasonable renters to enter their airline frequent-flyer number or points-program number suggested, if not affirmatively stated, precisely the opposite.

77.     All the acts, practices, misrepresentations, and omissions by Budget described above constitute affirmative misrepresentations; intentional omissions; and unconscionable, unlawful, fraudulent, and deceptive commercial practices that directly and proximately caused plaintiffs' and other reasonable renters' ascertainable losses.

## SECOND CAUSE OF ACTION
### Breach of Contract under New Jersey Law against BRACS

78.     This legal claim incorporates all of the foregoing allegations.

79.     Plaintiffs contracted with Budget by reserving a rental vehicle on www.Budget.com. That contract never explained that Budget would charge them for frequent-flyer miles or reward points.

80.     Plaintiffs fully performed and satisfied their obligations under the contract that Budget formed with them through Budget's reservation process.

81.     In violation of New Jersey common law, Budget breached its contract with plaintiffs by not performing according to the contract's obligations and by instead charging plaintiffs for frequent-flyer miles that Budget offered to them at no additional charge (i.e., "perks") as a term of Budget's rental contract.

82.     Plaintiffs have suffered damages as a direct and proximate cause of Budget's breach of contract.

### THIRD CAUSE OF ACTION
**Breach of Implied Covenant of Good Faith and Fair Dealing against BRACS**

83.     This legal claim incorporates all of the foregoing allegations.

84.     The contract formed between Budget and plaintiffs through Budget's reservation process was subject to the implied covenant that Budget would conduct its business with plaintiffs in good faith and would deal fairly with them.

85.     Budget breached this implied covenant by failing to disclose Budget's surcharge associated with the frequent-flyer miles that Budget encouraged and invited plaintiffs to receive, and instead misrepresenting that Budget would provide plaintiffs frequent-flyer miles at no additional charge (i.e., "perks") when Budget knew that it was subjecting plaintiffs to a charge that, due to Budget's failure to disclose this charge, plaintiffs could never have contemplated.

86.     Budget breached this implied covenant by not providing terms in its contract that conspicuously disclosed this surcharge to plaintiffs.

87.     Plaintiffs have been damaged as a direct and proximate result of Budget's breach of the implied covenant of good faith and fair dealing.

## FOURTH CAUSE OF ACTION
**Request for Injunctive Relief under New Jersey Law against ABG and BRACS**

88.     This legal claim incorporates all of the foregoing allegations.

89.     Injunctive relief is appropriate when it appears with reasonable certainty that a party to an action will continue or repeat its wrongful acts.

90.     Enjoining Budget from continuing to charge customers, like plaintiffs, its hidden or not fully disclosed surcharge for frequent-flyer miles and reward points is appropriate because plaintiffs have established a reasonable likelihood of success on the merits; plaintiffs will suffer irreparable harm without such an order; the balance of the equities, including the public interest, weigh in favor of granting plaintiffs' request injunctive relief; and alternate remedies are inadequate to assist plaintiffs.

## FIFTH CAUSE OF ACTION
**Request for Declaratory Relief against ABG and BRACS
Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.***

91.     This legal claim incorporates all of the foregoing allegations.

92.     Plaintiffs contend that Budget is charging them and others illegal surcharges for frequent-flyer miles or reward points; Budget likely believes these surcharges are not illegal.

93.     As such, an actual controversy exists between plaintiffs and Budget concerning the parties' rights and duties with respect to the legality of Budget's surcharge for frequent-flyer miles and reward points.

94.     The parties require this Court's declaration as to their respective rights, duties, and any other relevant legal relations, whether or not plaintiffs could seek or are otherwise entitled to further relief.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment as follows:

A.      An order declaring that this action is properly maintainable as a class action, certifying plaintiffs as the class representatives, and designating plaintiffs' counsel as lead counsel for the class;

B.      An order awarding plaintiffs and the class compensatory damages, treble damages, attorneys' fees, and costs of suit for Budget's consumer fraud, pursuant to N.J.S.A. 56:8-19;

C.      An order awarding damages to plaintiffs and the class for BRACS' breach of contract;

D.      An order awarding damages to plaintiffs and the class for BRACS' breach of the duty of good faith and fair dealing;

E.      An order enjoining Budget from continuing to charge customers for receiving frequent-flyer miles of reward points unless Budget properly discloses these charges;

F.      An order declaring illegal Budget's practice of charging customers for frequent-flyer miles or reward points with proper disclosure;

G.      An order awarding plaintiffs pre- and post-judgment interest;

H.      An order awarding plaintiffs costs of suit; and

I.      An order providing such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.

Dated:  March 31, 2014                    **LITE DEPALMA GREENBERG, LLC**

                                          */s/ Bruce D. Greenberg*
                                          Bruce D. Greenberg
                                          Jeffrey A. Shooman
                                          Two Gateway Center, Suite 1201
                                          Newark, NJ 07102
                                          Telephone:      (973) 623-3000
                                          Facsimile:      (973) 623-0858
                                          E-mail:         bgreenberg@litedepalma.com
                                                          jshooman@litedepalma.com

                                          Daniel R. Karon
                                          **GOLDMAN SCARLATO KARON & PENNY,**
                                          **P.C.**
                                          700 W. St. Clair Avenue, Suite 204
                                          Cleveland, OH 44113
                                          Telephone:      (216) 622-1851
                                          Facsimile:      (216) 241-8175
                                          E-mail:          karon@gskplaw.com

                                          Laura Killian Mummert
                                          **GOLDMAN SCARLATO KARON & PENNY,**
                                          **P.C.**
                                          101 E. Lancaster Ave., Suite 204
                                          Wayne, PA 19087
                                          Telephone:      (484) 342-0700
                                          Facsimile:      (484) 580-8747
                                          Email:          mummert@gskplaw.com

                                          Jay R. Faeges
                                          **MILLER GOLER FAEGES, LLP**
                                          1301 E. 9th Street, Suite 2700
                                          Cleveland, OH 44114-1835
                                          Telephone:      (216) 696-3366
                                          Facsimile:      (216) 363-5835
                                          E-mail:          faeges@millergolerfaeges.com

                                          Grant A. Goodman
                                          **GOODMAN LAW FIRM**
                                          1390 W 9th St., Suite 410
                                          Cleveland, OH 44113
                                          Telephone:      (216) 928-9990
                                          Facsimile:      (216) 357-2679
                                          E-mail:         ggoodlaw@yahoo.com

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiffs, by their attorneys, hereby certify that to the best of their knowledge, the matter

in controversy is related to _Schwartz v. Avis Rent A Car System, LLC_, Civil Action No.  11-

4052(JLL)(MAH).  Plaintiffs are not currently aware of any other party who should be joined in

this action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are wilfully false, I am subject to punishment.


Dated: March 31, 2014                    **LITE DePALMA GREENBERG, LLC**


                                         _/s/ Bruce D. Greenberg_
                                         Bruce D. Greenberg
                                         Jeffrey A. Shooman
                                         Two Gateway Center, Suite 1201
                                         Newark, NJ 07102
                                         Telephone:      (973) 623-3000
                                         Facsimile:      (973) 623-0858
                                         E-mail:          bgreenberg@litedepalma.com
                                                          jshooman@litedepalma.com